May it please the Court, Mr. Bautista v. Metropolitan Transportation Authority. Good afternoon, I am Philip Denhoffer, the attorney for the Plaintiff Appellant, Jorge Bautista. This is a federal employer's liability action. My client, a police officer employed by the Metropolitan Transportation Authority, was caused to fall down a staircase as a result of a door that opened out into a descending stairway. The dangers of which are legendary, the dangers of which the trial court below recognized constitute a valid bona fide case for negligence. Interestingly, however, the court below decided to resolve issues of fact, the measurements and size. Well, let me ask you, Mr. Denhoffer, let's start with the facts. And I know the exact measurement of the platform may not be clear from the record, I understand that. But we know, I think, two things that are undisputed about that. The first is, from looking at the photos, you can correct me if I'm wrong, it is clear that the door does not open out over the stairs. Whatever, after the door is fully opened, that there's a number of inches before the stairs, correct? Well, that is the top stair that the door is opening out over. The landing, whatever you want to call it, the landing is longer than the stairs. Just slightly longer than the width of the door. You said over, did you really mean to say the door opens over the first stair? It doesn't open over the first stair, no, literally where there's- You used the word over, and that's why I'm not clear. Okay, no, I get your point. I get your point. The width of the door is short of the first stair, right? But not enough for a body to safely stand there on the other side. Yes. Which case, every single case you cited, which is what the district court noted, and I've checked every one of them. In every single one, the door opened over the stairs. There is no case that you cite ever under New York law, let me finish, where the door opens up fully onto a platform, and it's been found to be inherently dangerous. The other thing I was going to add from a factual standpoint is it's clear that that platform is at least four feet, because there's a four foot ruler measurement, and again, we can argue about how many inches beyond four feet. But it is clear from a number of photos that it is at least four feet in length. I think it's 36 inches in length, not four feet. It's what? I think it's 36 inches in length, not four feet. It's six inches? 36. 36. I don't know how to compare, because the ruler, the measurement has 48 inches on it, and they're weighing it on the ground, but- The evidence suggests the door is 30 inches. The door. The door itself. Each leaf of the door is 30 inches. When it opens, it falls short by six inches, which would make 36 inches. Let me go back to the original point I was trying to make. The whole point of those cases are that you should not, when you open up a door outwards, which itself is not inherently dangerous. There are millions of doors that open outwards, including for fire safety reasons, when you're going downstairs, you want to have doors that open outwards. So it's certainly not inherently dangerous to have a door open outward. What made those cases inherently dangerous is your first step. When you open the door, it was not on a landing, it was onto the stairs. Not entirely true. The cases discuss leaning against the door is what's the inherently dangerous action. That the door is permitted to open outward in that direction of the perceived danger. Well, you're not hurt, but when you lean on it, you're hurt when you fall down the stairs, right? No, but the fact that the door doesn't lock. But the fact that- You're hurt when you fall down the stairs, correct? You're hurt when you fall, yes, but- So you're not hurt when you lean on the door. No, but it's the fact that the door has no latching mechanism. It has no support. So that's your inherently dangerous condition? It's not the length of the landing? It's the no latching mechanism? No, it's the combination of them all. That's what makes for a triable jury question. Is the fact that we have these questions about what's going on there. That's for a jury. This is Federal Employer's Liability Act where it's negligent to the slightest degree. Can we go back? You said it was a matter of inches from the end of the door to the beginning of the stairs. Is that what you said? From, if you open the door, the picture shows that it's a matter of inches. Yes. Where do you get that from the photographs? You want me to cite you the particular photograph? Sure. Okay, where are the photographs in the chart? I think they're, I don't know, are you looking at the appendix? Yeah, I am. All right, tell me a page and a corner. How about page A428, upper left? 428, okay. Or upper right, either one you like. Upper right. No, no, no, there's one with the open door. Yeah, no, the upper right there, yeah. You can see, the door is 30 inches. You've got about six inches from the door to the end of the stair. How big is that ruler? That's a 48 inch ruler. It looks like a sheet rock square, four foot. Yeah. Looks like four foot. All right, so now if you, are you on page A428? Right. Okay, look at the upper right hand corner photo. On 428, the upper right, yeah. And it shows the end of the ruler facing the viewer, it's facing us, right? Correct. And it shows a line marking the separation between the door and the platform, right? Correct. And you're saying that space is three inches? No, I said. How far is it? I think it's about six inches. I think it's about a half a foot from the end of the door to the platform. So we have at least a four and a half foot platform, at least, right? It would appear so from that photograph, yes. What do you mean? But we're evaluating size with the witness's testimony was that there was no platform, if you remember. My client's partner testified he didn't remember a platform at all. All he knows is he went through the door and down the stairs immediately. But it doesn't matter whether he remembers the platform, it's indisputable on this record there is a platform, right? But isn't it up to a jury to make that conclusion? So if we would agree with you on- You mean they can look at this photo and say, yeah, we see the platform, but we're jurors, we're going to find there's no platform? A jury has the right to accept any or all of the- How many feet is the platform? I don't know what they're going to accept, but the point is it's their right to at least make that decision, not a court. Suppose it was a seven foot platform, should a jury decide that too? Okay, but are you saying as a court that four and a half feet is enough? Well, is there a building code, New York State building code, or any building code that suggests that it's not enough? They say that it's consistent with every building code. I looked up New York State- The New York State building code says 44 inches is sufficient. They proved none of it. They proved none of that. That's not in the record. They didn't offer any evidence to show what the building code was and what the right size was. You had to look that up yourself. That's to horse the record. How about thinking in terms of a human stride? Isn't a stride about two feet? A human stride for police officers in the midst of an altercation with a perp? No, no, no, a normal stride. You don't design platforms for people to run races on. No, you design a safe workplace for somebody who's doing the job. A normal stride. Can we agree it's about two feet? You can pace it off yourself right there. It could be two, it could be three, give or take. It could be three? It could be- Boy, you have very long legs. When I count yards and I do a pace, I go by the number of strides that I take. I'm figuring about three feet. To a stride? Yeah. That's your customary stride? That's my customary stride. Really? Honestly, sir. We could talk about that off the record. We would agree with you that every- I was an Olympic race walker. I have a different concept than you. You're an Olympic runner. I was an Olympic race walker. I was an Olympic race walker. I have a different concept than you. When I measure a field, I know what my stride is. You said you were in the Olympics? I qualified. I competed for the United States of America in multiple international competitions. You say you don't have to design a platform to accommodate Olympic runners? Is that fair to say? We're getting ridiculous, sir. No, well, but we're trying to talk about- We're talking about- You mentioned it. A platform used by ordinary people. We're talking about a concept of negligence to the slightest degree, whether there's a tribal issue for a jury under that concept. We're debating the merits of what's the right size. We would agree with you, our holding would require any building in the state of New York that has a landing of four and a half feet to change that. Because we would be concluding under New York law that it's an inherently dangerous condition that if someone fell, they could go to a jury on it. You're not saying it's inherently dangerous, you're just saying it's dangerous. Right, so they're going to have to do something, right? They're going to have to replace, I don't know what they're going to do. They're going to have to change the doors. They're going to have to extend- No, they did that at other stations. What are you talking about? They have ten out of the 14 stations are exactly the same. So somebody read the blueprints wrong and put the hinges in wrong at ten of the stations, and they got it right at two of them. They should have taken notice of it. How many residential homes do you open the screen door out, do you walk out onto a stoop? Right, are all those inherently dangerous too? Well, when you've got passengers coming up that station and passengers going down that station at the same time, you don't have a door opening out sweeping the passengers coming up the stairs off the platform. And that's what happens here. From what you said. There's no place to safely stand, and that's the testimony of their witness. There's no place for one to safely stand on the other side of those doors and open those doors coming up. It's so unsafe that in these stations where millions of people over, I don't know how many years, have gone through all these stations. They haven't had one single complaint of any type. That's not a proper argument. Just because I run the red light and the stop sign by my house a million times because I know no one's ever there, doesn't mean the time when I hit somebody I'm not negligent. All right. Council, can we at least agree from what you've said that the distance from the threshold to the first step is at least four and a half feet? It appears that way from the photograph. Okay, that I have to concede from this photograph that you've presented to me. Okay, or which I presented as part of the record. Okay. We have the other issue to discuss yet too. You have your treat. Thank you. How was Jesse Owen? What? No, I wasn't living Jesse Owen days. I'm not that old. But I did compete against many notable names in race walk. Most of the time. In which event? What? I went 20 kilometer walk. I was a race walker, literally. 20 kilometer walk. Yes, sir. Thank you. Good afternoon, your honors. Yes, go ahead. Good afternoon, may it please the court. The Federal Employer's Liability Act is not a strict liability statute. The plaintiff still has to prove the elements of negligence, even if the burden of proof is substantially lower than in an ordinary tort case. And the plaintiff presented no evidence of negligence in this case. There was no notice to the MTA of any potential hazard, either actual or constructive. As your honors have pointed out, these stairs are taken by hundreds of thousands of commuters on a regular basis. There's no evidence in the record of any accidents caused by the platform itself, by the direction that the doors swing. The stairs in the platform were built to meet the relevant standards. They meet the New York Fire and Building Code and the Metro North Station building design standards. The plaintiff has no evidence of another standard that they should have met, that they didn't, that would make them to be too short. And his other theories of negligence are pure speculation. He speculates that maybe if the platform had been longer, people wouldn't have fallen down it. But it was in the midst of a physical altercation between a number of people, and there are three of them. And so to say, if it had been five feet or seven feet, we wouldn't have fallen down, it's just speculation. There's no evidence. Here's what I don't understand about this case. Either you or the other side or both took the trouble to take photographs of this landing with a four foot ruler laid down on it, right? I don't know which side did that, but some side did that, right? Yes, they were done by Mr. Dinhoffer's client. It was what? Mr. Dinhoffer's client made those photographs. Did you think the length of the landing mattered in this case? I don't think the length of the landing matters at all in this case. It doesn't? Supposing it was a foot and a half, would that matter? Yes, I think if it was- So then it does matter. Okay, yes, your honor, it matters. Since it matters, why didn't your side defending this case put in the record the exact measurement of the landing? Your honor, I think that the time when we realized when the length of the, the plaintiff's theories of liability changed throughout discovery, and I don't think we realized until summary judgment that that was the issue that the plaintiff had decided was the cause of the, for much of the case, the plaintiff held that the direction that the door swung was the issue on liability, or the lack of a hint, or lack of a locking mechanism, I think it was originally his theory. The length didn't come in until later on. It was very late when that became the issue, so no one went out to measure at that point. I think we had already, we were briefing summary judgment at that point. It didn't come up in the depositions, for example. Mr. Kennan could have testified, I think, what the precise measurements if we had known that that was the issue. Your adversary says, apparently agrees, I think the way he put it was the record appears to show that the distance is at least four and a half feet. Yes, your honor. Do you agree with that? Yeah, I think you can tell that from the pictures themselves. Okay, thank you. He said that this issue regarding whether it's consistent with code or not, that you didn't put any evidence regarding that either. Do you want to respond to that? I believe it was in one of the affidavits we put in on summary judgment, that in Mr. Serrar's affidavit, that this is designed in accordance with the building code. It was also part of Mr. Kennan's deposition testimony. And the building code is a matter of public record, as your honor knows. You can look it up. It's New York State. I think it's a regulation, so it's not impossible to find. Okay, and then he also pointed out that it's a combination. You said the theory has switched over time, but in response to some of my questions, he said it's a combination of the lack of some type of lock and the platform that makes it negligent. Do you want to respond to that? The negligence has to be something that the MTA knew about and didn't take care of. Even if we were to assume that the combination of the two things, the lack of a locking mechanism plus the size of the platform. There's never been any, it's not inherently dangerous. Hundreds of thousands of people use these stairs and doors on a regular basis, and there's never been a complaint about it. There's no evidence of injuries caused by that. So I don't think that the MTA was on notice that this was a potential hazard that a bunch of two police officers and somebody doing graffiti at the top of the stairs might get into a physical altercation, fall through the stairs, and fall through the doors, and then down the stairs, and that a police officer would be injured doing that. Let me ask you, what role does New York state law play in our negligence analysis under this federal statute, the FELA? It provides evidence of a standard, it is not the only standard. I think FELA is pretty clear that the fact that there is a standard is not dispositive. But it's evidence of something that the MTA was building towards, and it shows that there was thought put into the platform size. It wasn't just, we'll just do four and a half feet, it looks good enough to me. It's longer than the building code requires. But the New York state law cases stand for the proposition that the question of whether a door and stair configuration is hazardous is supposed to be decided by the jury, right? I don't think the cases say that. I think the cases say that if it isn't, that this is a place where the courts use common sense. If you look at the situation and it appears to be dangerous, then that needs to go to a jury. At some point, you would have to say, there's no jury question. Clearly, if you look out and there's- Well, the common sense to which you refer is something that we usually associate with the finder of fact, right? Yes, although at some point, there has to be some standard to which an employer can hold themselves. If the employer says, well, I have, if anytime anyone falls down the stair, it's inherently dangerous. Well then, stairs are inherently dangerous. There must- If this were a two foot landing and it opened out onto the stairs, at least partially, we couldn't say, well, we think two feet is enough. That would have to go to a jury. If it was two feet and the door went beyond the two feet, that would have to go to a jury, right? Certainly. I think that's right. I think if the door opened up and, I don't know exactly where the bright line is. I don't know that I could tell you that. If it was a very small door, maybe the door wasn't two feet wide. But I think the cases are pretty clear that if the door opens out onto a step. Some of the codes say, as far as, it either has to be as long as the door or 44 inches, whichever is less or something. So it seems to be there's either a bright line number for code purposes at least, or at a minimum, the length of the door, right? I think it's a practical matter that makes sense as a rule. In either event, this platform is deeper than either of those two things. In Griffin, is Griffin the state case where there were the two doors, the two stairs, out of the basement stairs on the other, that's Griffin, isn't it? I think so, your honor. And isn't that the case where the door opened over the stairs? There were several cases where the doors opened over the stairs. I'm not sure if Griffin- And those cases were said to require a jury. Yes. All right, so what about cases where the door doesn't open over the stairs? What does New York say about that? I don't recall seeing any cases on that. If it doesn't open over the stairs, where's the negligence? So at some point, like you said, if it was a ten foot landing, it clearly doesn't go to a jury. At least not on that issue. Right, of course, on that issue. And at a nine foot, it doesn't. Right. But at one foot, it probably, it does, right? I think that's right, then it's a step. So there's a line to be drawn. Yeah, I agree with- Now the question is, is it a matter of law what the outer limit is, or the minimum limit, I should say, where it doesn't go to a jury? I think that, as Judge Bianco says, if the platform is at least as deep as the door swings open, there doesn't seem to be any issue of fact there for it to go to a jury. It means- You think even a, let's, standard door is what, three feet, standard door? 30 inches or 36 inches. All right, let's take it at 36. You think if the platform was only 36, that wouldn't go to a jury? I don't know, Your Honor, we didn't have a 36 inch platform here. We had a 48 plus inch platform. Okay, so you don't have to stand or fall, literally, on a 36 inch limit. Right, we've met the building code standard. At some point, apparently we're agreeing that as you think of a longer platform, at some point, it's not a jury issue. I think that has to be right, or- And at some point, sure, it is a jury issue. I agree with you. And do courts under New York law get to decide at least the minimum length before it's a jury issue? I think they do. Okay. All right, thank you. Thanks very much. But this is not New York law. This is Federal Employer's Liability Act, where it's negligence to the slightest degree. And that's what makes it a jury issue, because we don't know where that bright line is. But whose law do we use to decide if it's negligence? Federal Employer's Liability Act must control. The federal common law that's developed under the laws of the Federal Employer's Liability Act- Oh, you think this is a common law question? This is a matter of the federal- A federal common law. That's what controls the Federal Employer's Liability Act, is the common law as developed in the courts of the United States. Well, all right, even if that's true, I'll ask you the same sequence I asked your adversary. At some point, a platform is long enough so that there's no common law negligence, right? That's for a jury to decide. Really? You think if it was a 20 foot platform, it still goes to a jury? It may be so obvious that the jury decides against me at that point, but it still goes to a jury. I believe that the trial by jury is part of the remedy. Wait a minute, just a minute. Platform the length of the center aisle of this courtroom. And if there were stairs beyond those doors, and a guy fell down, that would have to go to a jury in an FELA case. Obviously, I wouldn't bring that case, but if someone did bring that case, I still believe that goes to a jury. Was it adequate or not? That's, okay, I wouldn't bring that case, okay? And I'm a plaintiff's FELA lawyer 40 years now, you've known me a long time here. I would not bring that case, but I still believe the FELA says that trial by jury is part of the remedy. It's that sacrosanct. Well, it's not whether you would bring the case, the test is what is the law? The law is that it's up to a jury to decide negligence on it, no matter how ridiculous. That's your position? Yes. Okay. Okay, I think we have a very liberal law there that allows just that. But the other issue we didn't go was I moved for summary judgment on the failure to discharge the non-delegable duty. That's another theory of negligence that I cross moved for in this case, and they never discharged that non-delegable duty. They delegated that to a railroad. The MTA delegated it to the third party land over. Now, the Supreme Court went to the bother of saying, when these accidents happen, even on the property of third parties, the railroad employer still has a non-delegable duty to inspect themselves. They did not do that. They say they relied on the routine inspections of the MTA. They did not engage in any agency. That's a fiction made up by the trial court. It was never argued by the defendant. The Supreme Court has said the duty is not discharged by using care and delegating it to an independent contractor. That's the general buildings contractor case cited on page 32 of my brief. They discharged the duty by delegating it, so they say, by their own admission. They did not do it themselves. That's negligence per se. When they failed to even bother to look to see if there was a dangerous condition or not there in the workplace where they knew their employee would be working, they violated that duty. And they were in violation of the Federal Employer's Liability Act. Thank you, counsel, very much. We appreciate the arguments. We will reserve decision.